Robinson, J.
 

 Irving B. Neikirk, prior to November, 1917, was the cashier of the defendant in error bank. The bank had a paid-in capital and surplus of not to exceed $15,000, and therefore was not authorized by law to loan or extend credit to any one person or any single entity in excess of $3,000. There was, prior thereto, in the vicinity of the bank, a road contracting firm engaged in the construction of certain roads for the state of Ohio and for the county of Seneca,- and the bank was desirous of obtaining and retaining the banking business of the road contracting firm. The board of directors of the bank authorized a loan of at least $4,000, and probably $6,000, to the road contracting firm; and, to prevent discovery by the state banking department of the fact that it was loaning or extending credit to a single entity in excess of the sum authorized by law, took the individual notes of the three persons constituting the firm, for $2,000 each. Thereafter the bank took an assignment from the road contracting firm of all sums then due or thereafter to become due from the state and county upon its several road contracts, as collateral security to the $6,000 evidenced by the three several notes, and as collateral security for future loans that might be made to the road contracting firm, and for the purpose of increasing its credit at the bank; and all sums then due or that thereafter became due upon such contracts were paid to the
 
 *245
 
 bank by tbe state and by tbe county of Seneca during tbe subsequent operations of tbe road contracting firm.
 

 Tbe directors of tbe bank, at tbe time of tbe taking of sucb assignment, knew, as disclosed by tbe testimony of tbe president of tbe bank, that tbe road contracting firm bad little, if any, assets other than tbe road contracts, and knew that the road contracting firm bad no means of paying its employes and paying for material other than so much of tbe sums paid to tbe bank upon its road contracts, which sums bad been assigned to tbe bank, as tbe bank would permit it to check out.
 

 While tbe directors of tbe bank disclaim any knowledge of tbe fact that the road contracting firm was being permitted by the cashier of tbe bank to make overdrafts upon tbe bank, tbe evidence discloses that they knew the road construction was going forward.
 

 In October, 1916, the road contracting firm went into bankruptcy, and the account of tbe firm with tbe bank became in tbe main uncollectible, and it was then discovered by tbe directors of the bank, if not theretofore known by them, that tbe road contracting company bad overdrawn its account with the bank in a large sum. Tbe directors then required the cashier to pay to tbe bank, to cover sucb overdrafts, the sum of $8,275.
 

 On or about tbe 1st of November, 1917, the bank was examined by an examiner of tbe state bank-, ing department, and it was then discovered that tbe overdrafts with tbe bank of tbe road contracting firm, prior to its being adjudged a bankrupt, amounted to approximately $20,000, of which sum
 
 *246
 
 $8,275 had theretofore been repaid to the bank by the cashier; and it was then also discovered, if not theretofore known to the directors, that the books of the bank had been manipulated by the cashier for the purpose of preventing discovery by the bank examiner of the existence of the overdrafts.
 

 The resignation of the cashier was demanded by the bank examiner, and received; and the directors of the bank were required by the bank examiner to restore to the bank its impaired capital in the sum of $12,000 before 9 o’clock of the following morning. Thereupon the directors, or some of them, proceeded to the Commercial National Bank of Tiffin, and borrowed of it upon their individual credit the sum of $12,000, and paid the same into the bank of the defendant in error for the purpose of restoring the impaired capital of such bank.
 

 It is not clear, from so much of the record as we have examined, whether the $12,000 paid by some of the directors of the bank, plus the $8,275 paid to the bank by the cashier, covered all the losses sustained by the bank by reason of the overdrafts of the road contracting firm, and by reason of certain other misappropriation of funds by the cashier; but it is apparent that it was at that time estimated to cover all such losses.
 

 Thereafter the defendant in error bank approached Jeremiah Neikirk, who was also a director of the bank, and Anna B. Neikirk, his wife, who were the parents of Irving B. Neikirk, former cashier of the bank, and, without disclosing to them that the impaired capital of the bank had been restored, obtained of them a mortgage upon their real estate in the sum of $15,000 in favor of the
 
 *247
 
 defendant in error bank, for the purpose of restoring the same impaired capital of the bank which certain of the directors had already restored.
 

 Thereafter the defendant in error bank paid from the assets of the bank the note of $12,000, which had been executed by certain of the directors of the bank in their individual capacity, to the Commercial National Bank of Tiffin.
 

 Thereafter an action was begun to foreclose the mortgage of $15,000 against Jeremiah Neikirk and Anna B. Neikirk. To this action Jeremiah Neikirk and Anna B. Neikirk filed an answer, setting up two grounds of defense, one that the mortgage and their signatures to it were obtained by duress, and the other, want of consideration. Without attempting to follow the progress of the litigation growing out of this transaction, it is sufficient to say that this branch of the case reached the Court of Appeals upon appeal, was there heard, and that that court found there was no duress and that there was sufficient consideration for the execution of the mortgage. The question of duress was one of fact, and we have examined sufficient of the record to ascertain that the evidence in that respect was in conflict, and we are not disposed to substitute our judgment on a question of fact for that of the Court of Appeals. The evidence upon the question of consideration is not in conflict, at least upon the circumstances surrounding the payment to the bank of the $12,000 by certain of the directors of the bank. It concededly was a payment by them of that sum to the bank, exacted by the bank examiner for the purpose of restoring its impaired capital, and was made with a full understanding that
 
 *248
 
 such payment was unconditional, and that upon its receipt by the bank it became a part of the capital of the bank, and the bank’s absolute property, and that no obligation to the payors on the part of the bank arose out of such transaction. The bank examiner having exacted the payment for the purpose of restoring the impaired assets of the bank, and the bank having received the payment from certain of its directors in repayment of its impaired assets, as then estimated, caused in part by its failure to observe the inhibitions of Section 9754, which are now embraced in Section 710-122, General Code, with reference to the amount of credit the bank could extend to any single entity, it was not entitled to a double recovery thereon; and the fact that the bank, after securing the mortgage, returned the money so received to the original payors, does not change the situation at the time it secured the signatures to the mortgage. Whatever rights, if any, the payors may or may not have had, or may or may not now have, to contribution or to recoupment, is not here decided; but it is here decided that the bank as such had no right to exact from Jeremiah Neikirk and Anna B. Neikirk, or any one else, further payment to it of the items intended to be covered by the payment of the $12,-000 by certain of the directors.
 

 Because of the fact that the Court of Appeals did not determine the exact extent to which the capital of the bank had been impaired by reason of the unlawful or unauthorized acts of Irving B. Neikirk, up to the date of the execution of the mortgage here under consideration, this cause is remanded to that court for its determination of that
 
 *249
 
 fact; and that court is directed to decree a lien upon the real estate described in the mortgage in such an amount only as it finds the capital of the bank had been impaired by the unlawful or unauthorized acts of Irving B. Neikirk in excess of the $12,000 repaid by certain of the directors and the $8,275 repaid by him, if any, with interest upon such excess.
 

 Judgment reversed and cause remanded.
 

 Day, Allen, Kinkade, Jones and Matthias, JJ., concur.